UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE COMPLAINT OF | § | |
| AEP RIVER OPERATIONS, LLC | § | CIVIL ACTION 4:11-CV-00726 |
| | § | |

**MEMORANDUM AND ORDER**

This Limitations of Liability Act case is before the court on claimant CenterPoint Energy Houston Electric, LLC's motion to increase security. (Dkt. 23). The motion has been referred to this Magistrate Judge for disposition. (Dkt. 27). The motion is denied.

**Background**

On October 3, 2010, the M/V Safety Quest was towing three barges of scrap metal through the Houston Ship Channel when one of the barges in tow hit an electrical tower owned by claimant CenterPoint Energy Houston Electric, LLC. (Dkt. 1). At the time of this allision, complainant AEP River Operations LLC was the bareboat charterer of the M/V Safety Quest. (Dkt. 3). AEP commenced this litigation by filing a complaint for exoneration from or limitation of liability, asserting that it was not liable for the damage caused or, alternatively, that its liability is limited by statute to the value of the M/V Safety Quest and her freight then pending, which it stipulated to be $2,700,000. The stipulated value of the towing vessel is not contested. However, CenterPoint declares that the estimated cost of repair will exceed $5,000,000, and argues that the security must be increased to include the value of the three AEP barges in tow at the time of allision: $267,000 for the MEM 5023

barge; $470,000 for the AEP 7085; $358,000 for the HB 0257; and $85,903.36 for the freight on board. (Dkt. 23).

## Analysis

According to the Limitations of Liability Act, "the liability of the owner of a vessel for any claim, debt, or liability [arising from any embezzlement, loss, or destruction of any property, goods, or merchandise shipped or put on board the vessel, any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of the owner] shall not exceed the value of the vessel and pending freight." 46 U.S.C. § 30505(a-b). Furthermore, "the term 'owner' includes a charterer that mans, supplies, and navigates a vessel at the charterer's own expense or by the charterer's own procurement." 46 U.S.C. § 30501. The value of the vessel and pending freight must be deposited with the Court by the owner. 46 U.S.C. § 30511.

The issue here is how broadly to interpret the term "vessel": is it limited to the tug itself, as AEP asserts, or is it the flotilla of vessels including the barges in tow, as CenterPoint claims? At one time, the answer to this question was unsettled. In 1927, the Supreme Court observed, "This question is a nice one, and the answer to it is by no means obvious." *Sacramento Navigation Co. v. Salz*, 273 U.S. 326, 330 (U.S. 1927). *Sacramento Navigation* resolved the issue by drawing a distinction between two lines of cases, a distinction based on the relationship between the offending vessel owner and the claimant.

In "pure tort" cases, where no contractual or consensual relationship exists between owner and claimant, only the offending vessel itself need be tendered for limitation purposes. This was the situation in *Liverpool, Brazil & River Plate Steam Navigation Co. v. Brooklyn Eastern District Terminal,* 251 U.S. 48 (1919), where a tug brought her tow, a car float, into collision with a steamer, which sued the owner of the tug and its float for damages. The case came before the Supreme Court on the question whether the value of the whole flotilla should not have been included for limitation of liability purposes. Writing for the Court, Justice Holmes declared, "[F]or the purposes of liability the passive instrument of the harm does not become one with the actively responsible vessel by being attached to it." *Id.* at 52. According to the Court, the rule was not changed by common ownership of the vessels in the flotilla.

On the other hand, the rule is different when there is a contractual relationship between the claimant and the offending vessel owner. This was the situation in *Sacramento Navigation,* decided eight years after *Liverpool* in an opinion also joined by Justice Holmes. In that case a barge towed by a steamer collided with a British ship at anchor and was swamped, resulting in total loss of a load of barley. The owner of the barley cargo sued the vessel owner for the loss, essentially claiming a breach of their contract for transportation of goods. The Court ruled that the tug *and* her barge in tow were to be treated as a single vessel for liability purposes, because they were owned in common and engaged in a common enterprise. The Court had no difficulty distinguishing *Liverpool*:

> The distinction seems plain. There the libel was for an injury to a ship in no way related to the flotilla. It was a pure tort – no contractual obligations were involved; and the simple inquiry was, What constituted the "offending vessel"? Here we must ask, What constituted the vessel by which the contract of transportation was to be effected? , a very different question. *If the British ship which here was struck by the barge were suing to recover damages and a limitation of liability were sought by the owner of the tug and barge, the* Liverpool *case would be in point.*

273 U.S. at 332(emphasis supplied). *See also Standard Dredging Co. v. Kristiansen,* 67 F.2d 548 (2d Cir. 1933) (applying flotilla rule to the case of a seaman injured while working on a barge and a dredge engaged in a common venture, because his employment relationship with the vessel owner formed the necessary "contractual obligations").

Thus, contrary to CenterPoint's claim, *Sacramento Navigation* in no way overruled or "superseded" *Liverpool.* Both cases remain good law today, notwithstanding some occasionally critical academic commentary.[1] Nor has the Fifth Circuit departed from the Supreme Court's teaching in applying *Sacramento Navigation's* so-called "flotilla doctrine." *See Cenac Towing Co. v. Terra Resources, Inc.,* 734 F.2d 251 (5th Cir. 1984) (remanding for further findings on common ownership necessary to invoke flotilla doctrine in seaman death case); *Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Co.,* 377 F.2d 724 (5th Cir. 1967) ( flotilla doctrine applied in action for damage to offshore gas well equipment caused

---

[1] CenterPoint claims that the Fifth Circuit has joined in this criticism, but the cited passage from *In re Drill Barge No. 2,* 454 F.2d 408, 411 (5th Cir. 1972) does not bear this out. Instead, the court was merely quoting a lengthy passage from a Second Circuit opinion by Judge Learned Hand. *United States Dredging Corp. v. Krohmer,* 264 F.2d 339 (2d Cir. 1959). While at one point Judge Hand did say that "as a new question" he would have misgivings about the flotilla doctrine*,* nowhere did he suggest that it should now be abandoned.

by vessel during performance of construction contract between equipment owner and vessel owner); *In re Drill Barge No. 2,* 454 F.2d 408 (5th Cir.), *cert. denied,* 406 U.S. 906 (1972) (flotilla doctrine applied where subcontractor's employees were injured while performing a construction contract with a flotilla of vessels engaged in a common enterprise). None of these cases involved the *Liverpool* "pure tort" situation, where there was no contractual obligation between the claimant and the offending vessel owner. More recently, the Fifth Circuit affirmed a district court ruling which declined to apply the flotilla rule absent a contractual or consensual relationship between the claimant and the vessel owner. *In re Libel of Kristie Leigh Enterprises, Inc.,* 168 F.3d 206 (5th Cir. 1999).

Turning to the facts of this case, CenterPoint alleges that AEP was negligent in its operation of the Safety Quest, and asserts a claim based upon maritime collision and tort principles. Neither CenterPoint nor AEP allege the existence of any contractual arrangement between them, and CenterPoint does not base any claim in this proceeding on a contractual obligation. Instead, this is a "pure tort" case governed by the Supreme court's holding in *Liverpool*, and the flotilla doctrine simply does not apply.

### Conclusion

For the foregoing reasons, CenterPoint's motion to increase security is denied.

Signed at Houston, Texas on January 23, 2012.

Stephen Wm Smith
United States Magistrate Judge

5